IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ANDREA A.,[1]                                            No. 6:20-cv-00838-HZ

                        Plaintiff,                       OPINION & ORDER

        v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

                        Defendant.

Kevin Kerr
Kerr Robichaux & Carroll
P.O. Box 14490
Portland, OR 97293

        Attorney for Plaintiff

Renata Gowie
Assistant United States Attorney
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this Opinion uses the same designation for a non-governmental party's immediate family member.

1 – OPINION & ORDER

Benjamin Groebner
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

      Attorneys for Defendant

HERNÁNDEZ, District Judge:

      Plaintiff Andrea A. brings this action seeking judicial review of the Commissioner's final decision to deny disability insurance benefits ("DIB"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). The Court reverses the Commissioner's decision and remands this case for further administrative proceedings.

## PROCEDURAL BACKGROUND

      Plaintiff applied for DIB on December 26, 2017, alleging an onset date of December 31, 2015. Tr. 67.[2] Plaintiff's date last insured ("DLI") is December 31, 2021. Tr. 67. Her application was denied initially and on reconsideration. Tr. 13.

      On November 13, 2019, Plaintiff appeared with counsel for a hearing before an Administrative Law Judge ("ALJ"). Tr. 34. On December 3, 2019, the ALJ found Plaintiff not disabled. Tr. 27. The Appeals Council denied review. Tr. 1.

## FACTUAL BACKGROUND

      Plaintiff alleges disability based on "Blind or low vision, Depression, Open Heart Surgery (2010), 2015 1st Knee Surgery, 2017 2nd Knee Surgery, Needs full knee replacement." Tr. 220. At the time of her alleged onset date, she was 45 years old. Tr. 68. She has a high school

---

[2] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed herein as Docket No. 13.

education and past relevant work experience as receptionist, auto detailer, and recreational

vehicle repairer. Tr. 24–25.

**SEQUENTIAL DISABILITY EVALUATION**

A claimant is disabled if they are unable to "engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which . . . has lasted or can

be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§§ 423(d)(1)(A), 1382c(a)(3)(A). Disability claims are evaluated according to a five-step

procedure. *See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases,

agency uses five-step procedure to determine disability). The claimant bears the ultimate burden

of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in

"substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137,

140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines

whether the claimant has a "medically severe impairment or combination of impairments."

*Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not

disabled. *Id.*

In step three, the Commissioner determines whether the claimant's impairments, singly

or in combination, meet or equal "one of a number of listed impairments that the [Commissioner]

acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141;

20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if

not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any

impairment(s), has the residual functional capacity (RFC) to perform their "past relevant work."

20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can perform past relevant work, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f). If the Commissioner meets their burden and proves that the claimant can perform other work that exists in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after her alleged onset date. Tr. 15. Next, at steps two and three, the ALJ determined that Plaintiff has the following severe impairments: "degenerative disc disease, dysfunction of a joint, obesity, substance addiction, and depressive disorder." Tr. 15. However, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 16. At step four, the ALJ concluded that Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) with the following limitations:

> [T]he claimant can lift and carry twenty pounds occasionally and ten pounds frequently. The claimant can stand and walk 2 hours in an 8 hour day, and sit for 6 hours in an 8 hour day with regular breaks. The claimant can occasionally climb ladders, ropes, or scaffolds, and can occasionally kneel, crouch, and crawl. The claimant can tolerate occasional exposure to workplace hazards such as unprotected heights and exposed, moving machinery. The claimant can perform simple, routine tasks and can tolerate occasional contact with coworkers and the general public.

Tr. 18. Because of these limitations, the ALJ concluded that Plaintiff could not perform her past relevant work. Tr. 24. But at step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as "stuffer," "assembler," and "addresser." Tr. 25. Thus, the ALJ concluded that Plaintiff is not disabled. Tr. 27.

**STANDARD OF REVIEW**

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings "are based on legal error or are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's") (internal quotation marks omitted).

**DISCUSSION**

Plaintiff presents one issue on appeal: whether the ALJ erred at Step Five by accepting Vocational Expert (VE) testimony that was not supported by substantial evidence. Pl. Br. 4. Plaintiff argues that the ALJ failed to adequately address Plaintiff's evidence that casts doubt on the VE's estimate on the number of jobs available in the national economy for the occupations identified at Step Five. *Id.* The Commissioner responds by arguing that Plaintiff's attorney's allegations that the job numbers are incorrect is based on his own lay research—without any authentication, analysis, or explanation from another expert—and does not present a basis for

remand. Def. Br. 3. The Commissioner also emphasizes that the ALJ considered and rejected Plaintiff's rebuttal, finding the VE's testimony acceptable. *Id.* at 4.

"While the claimant has the burden of proof at steps one through four, the burden of proof shifts to the [Commissioner] at step five to show that the claimant can do other kinds of work." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009) (citations omitted). "The ALJ may . . . pose to a vocational expert a hypothetical incorporating the residual functional capacity determination ("RFC"); the expert then opines on what kind of work someone with the limitations of the claimant could hypothetically do." *Id*. The ALJ must then determine whether, given the plaintiff's RFC, age, education, and work experience, "specific jobs exist[ ] in substantial numbers in the national economy that [a] claimant can perform despite her . . . limitations." *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995). There is no bright-line rule for determining the number of jobs that qualify as a "significant" or "substantial" number in the national or local economy. *Gutierrez v. Comm'r of Soc. Sec.,* 740 F.3d 519, 528–29 (9th Cir. 2014). However, the Ninth Circuit has stated that an "ALJ's finding that 25,000 national jobs is sufficient presents a close call." *Id*. at 529.

"[A]n ALJ may rely on a vocational expert's testimony concerning the number of relevant jobs in the national economy, and need not inquire *sua sponte* into the foundation for the expert's opinion." *Shaibi v. Berryhill*, 883 F.3d 1102, 1110 (9th Cir. 2017); *see also Buck v. Berryhill*, 869 F.3d 1040, 1051 (9th Cir. 2017) ("[I]n the absence of any contrary evidence, a VE's testimony is one type of job information that is regarded as inherently reliable; thus, there is no need for an ALJ to assess its reliability."). However, when there is evidence of conflicting job numbers at step five, the Commissioner's decision may be reversed and remanded if it fails to address that discrepancy. *See Buck*, 869 F.3d. at 1047, 1052.

At the hearing, the VE identified only three jobs Plaintiff could perform:

> The first job would be stuffer, and that's DOT code 731.685-014. The national number's 215. The second job is a sedentary is assembler, DOT code 734.687-108, an SVP of 2, a Reasoning level of 1, national number's 25,342; an addresser, DOT code 209.587-010, an SVP of 2, Reasoning level of 2, national number's 6,131.

Tr. 63. Plaintiff's counsel asked the VE how she obtained the number of jobs in the national economy for each of these positions. Tr. 64. The VE explained that she used "the Job Browser Pro and SkillTran," which "uses employment numbers from existing multiple government data sources." Tr. 64. She went on to explain that she arrived at the DOT numbers "under the SOC by examining the occupations where that job is most likely to occur so that we can identify occupational density rather than just looking at all of the job numbers under that SOC." Tr. 64.

After the hearing, Plaintiff submitted a brief with rebuttal evidence on the issue of job numbers.[3] Using Job Browser Pro, Plaintiff obtained the following national numbers for each of the identified jobs: 215 for Toy Stuffer, 19 for Assembler, and 3,002 for Addresser. Tr. 330.

In his decision, the ALJ acknowledged Plaintiff's post-hearing brief addressing the VE's testimony as to the number of jobs available in the national economy. Tr. 26. In rejecting Plaintiff's objection to the VE's testimony, the ALJ first noted that Plaintiff's counsel found numbers in Job Browser Pro, whereas the VE also considered job numbers in SkillTran. Tr. 26. The ALJ further noted that Plaintiff's counsel "stipulated that she had no objections to the [VE's] qualifications as an expert" and extensively cross-examined the VE on a number of issues, including the source of the job numbers. Tr. 26. The ALJ concluded that in responding to the cross examination, the VE properly used her expertise and the resources identified in 20 CFR

---

[3] The Commissioner does not appear to dispute that Plaintiff has adequately preserved this issue under *Shaibi v. Berryhill*, 883 F.3d 1102, 1110 (9th Cir. 2018) (finding that "[i]t is enough to raise the job numbers issue in a general sense before the ALJ.").

§ 404.1566 in rendering her opinion. Tr. 26. Thus, the ALJ "overrule[d] [Plaintiff's] objections

to the testimony of the vocational expert, and [found] the testimony of the vocational expert

reasonable and acceptable." Tr. 26.

The ALJ's reasoning for rejecting Plaintiff's arguments is not supported by substantial

evidence in the record. SkillTran and Job Browser Pro are not two different sources for job

numbers as the ALJ suggests. Rather, as Plaintiff points out, SkillTran is the company that

produces the program Job Browser Pro. Pl. Br. 6–8. In addition, while Job Browser Pro may use

employment numbers from databases like the Census Bureau and Bureau of Labor Statistics—

which are resourced identified in the regulations—there is no evidence that the VE

independently reviewed these resources outside of the commercial database she accessed. Tr. 64

("I use the Job Browser Pro and SkillTran . . . And SkillTran uses employment numbers from

existing multiple government data sources."). Thus, contrary to the ALJ's finding, there is no

evidence that the VE considered numbers from any source other than Job Browser Pro.

Here, the evidence submitted by Plaintiff from Job Browser Pro directly contradicts the

VE's testimony. Plaintiff submitted printouts from Job Browser Pro showing the number of jobs

in the national economy associated with the specific DOT codes of the jobs identified by the VE.

Tr. 332–34. Plaintiff's evidence reflects a total of 3,217 jobs in the national economy for all three

jobs combined, in stark contrast to the 32,688 jobs as calculated by the VE from the same

database.[4] In other words, "the vast discrepancy between the VE's job numbers and those

tendered by [Plaintiff], presumably from the same source, is simply too striking to be ignored."

*Buck*, 869 F.3d at 1052. In light of this evidence, expert analysis was unnecessary. *See Monica*

---

[4] Indeed, from the VE's testimony and the Job Browser Pro information it is unclear to the Court
how the VE came up with these numbers, and the Commissioner does not offer an explanation.

*H. v. Comm'r Soc. Sec. Admin*, Civ. No. 6:20-cv-01774-MC, 2022 WL 884727, *3 (D. Or. March 25, 2022) (rejecting the Commissioner's argument that the plaintiff needed expert analysis or declaration and remanding where the plaintiff submitted contradictory numbers from Job Browser Pro). Because of this direct conflict, the ALJ's step five finding is not supported by substantial evidence.

  Remand for further proceedings is appropriate in this case. The VE testified that these are the only three jobs in the national economy that Plaintiff can perform, and there is case law that suggests 3,200 is not a significant number in this circuit. *See Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012) (holding that 1,680 jobs was not enough to qualify as significant). But it is the ALJ—not the Court—who should resolve the discrepancy between the VE's testimony and Plaintiff's evidence.

## CONCLUSION

  Based on the foregoing, the Commissioner's decision is REVERSED and REMANDED for administrative proceedings.

  IT IS SO ORDERED.

  DATED:_____ May 11, 2022 _____.


_____
MARCO A. HERNÁNDEZ
United States District Judge